```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------- x
STEPHANIE MAHONEY, *individually and as*   :
*Parent and Natural Guardian of S.B., an infant,* :
*and as Parent and Natural Guardian of J.M., an* :
*infant*, and MICHAEL BAILEY.              :         **MEMORANDUM & ORDER**
                                           :         14-CV-03881 (DLI)(VVP)
                         Plaintiffs,       :
                                           :
           -against-                       :
                                           :
UNITED STATES OF AMERICA, and              :
UNITED STATES DEPARTMENT OF                :
HOUSING AND URBAN DEVELOPMENT,             :
                                           :
                         Defendants.       :
----------------------------------------------------------- X
```
**DORA L. IRIZARRY, U.S. District Judge:**

On June 20, 2014, plaintiffs Stephanie Mahoney ("Mahoney"), individually and as parent and natural guardian of infants S.B. and J.M., and Michael Bailey ("Bailey," and, together with the foregoing, "Plaintiffs") filed the instant action pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2671 *et seq.*, against the United States of America ("United States") and the United States Department of Housing and Urban Development ("HUD," and, together with the United States, "Defendants"). The Amended Complaint ("Complaint" or "Compl.") alleges that Plaintiffs suffered physical injury and emotional distress as a result of Defendants' negligence in the ownership, maintenance, supervision, control, and security of a housing development in Staten Island, New York. (*See generally* Compl., Docket Entry No. 3.) Defendants move for dismissal of the Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, or in the alternative, for Summary Judgment pursuant to Rule 56. To date, Plaintiffs have neither served an opposition nor sought an extension of the briefing schedule.

Accordingly, the Court deems the instant motion fully briefed and unopposed. *See* June 16, 2015 Order (deeming the motion unopposed.) For the reasons set forth below, Defendants' motion is granted.

## BACKGROUND

### I. Local Civil Rule 56.1

Local Rule 56.1 of the Southern and Eastern Districts of New York requires a summary judgment movant to submit "a separate, short and concise statement, in numbered paragraphs, of the material facts as to which the moving party contends there is no genuine issue to be tried." It also requires the opposing party to submit "a correspondingly numbered paragraph responding to each numbered paragraph in the statement of the moving party, and if necessary, additional paragraphs containing a separate, short and concise statement of additional material facts as to which it is contended that there exists a genuine issue to be tried." If the opposing party then fails to controvert a fact set forth in the movant's Rule 56.1 statement, that fact will be deemed admitted pursuant to the local rule. *See* Local R. 56.1(c); *see also Giannullo v. City of New York*, 322 F.3d 139, 140 (2d Cir. 2003). Here, in light of Plaintiffs' failure to respond to the instant motion, the factual assertions in Defendants' Rule 56.1 statement are deemed admitted to the extent they are supported by admissible evidence.

### II. The Events at North Shore Plaza

This action arises from a shooting that occurred on September 14, 2011 at North Shore Plaza, a housing development located at 65 Holland Avenue, Staten Island, New York. (*See* Defendants' Rule 56.1 Statement ("Def. 56.1") ¶ 1, Docket Entry No. 11-3; Compl. ¶ 3.) At the time of the incident, North Shore was owned by a private entity known as North Shore Associates. (Def. 56.1 ¶ 2; Declaration of George H. Savapoulas ("Savapoulas Aff.") ¶ 2,

Docket Entry No. 11-1.)  The mortgage for the property was held by the New York City Housing Development Corporation ("HDC"), an agency that provides mortgage financing for multi-family projects and affordable housing projects.  (Def. 56.1 ¶ 4; Savapoulas Aff. ¶ 2.)

At all times relevant to this action, neither HUD nor the United States had any ownership interest in North Shore Plaza or North Shore Associates.  (Def. 56.1 ¶ 2; Savapoulas Aff. ¶ 5.)  HUD's only relationship to North Shore Plaza was its provision of a federal mortgage subsidy, in the form of interest reduction payments under the National Housing Act, to HDC as the mortgage holder for the property.  (Def. 56.1 ¶ 4; Savapoulas Aff. ¶ 3.)  In addition, HUD made payments to North Shore Associates on behalf of certain tenants that qualified for rental assistance under an applicable HUD housing program.  (Def. 56.1 ¶ 4; Savapoulas Aff. ¶ 4.)

On September 14, 2011, an armed assailant who was not a tenant at North Shore Plaza entered the premises and shot S.B. in the presence of Mahoney and Bailey, her parents, and J.M., her sister.  (Compl. ¶¶ 3-8.)  As a result of the shooting, S.B. suffered grave and permanent physical injury.  (*See id.*)  The remaining Plaintiffs, in addition to bearing the increased costs of S.B.'s care and medical treatment going forward, suffered emotional pain and distress from witnessing the incident.  (*See id.* at pp. 4-8.)

Plaintiffs allege that the United States, acting through its agent HUD, was negligent in its ownership, control, operation, supervision, management, security, patrol, and maintenance of North Shore Plaza, and that, as a result of such negligence, the assailant was able to enter North Shore Plaza and shoot S.B.  (*See id.*)  In September 2013, Plaintiffs presented their claims to HUD, which rejected them by written denial on or about January 2, 2014.  (*See id.* ¶¶ 11-12.)  Thereafter, Plaintiffs commenced the instant action against the United States and HUD, seeking $150,000,000 in damages.  (*See id.* at pp. 9-10.)

## DISCUSSION

I.   **Legal Standard on a Motion for Summary Judgment**

Defendants move to dismiss the Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, or in the alternative, for summary judgment pursuant to Rule 56. As a general rule, a motion is properly treated as one for summary judgment when a court considers materials outside the pleadings. *See, e.g., Sellers v. M.C. Floor Crafters, Inc.*, 842 F.2d 639, 642 (2d Cir. 1988). However, the court must consider whether the parties "should reasonably have recognized the possibility that the motion might be converted into one for summary judgment or [were] taken by surprise and deprived of a reasonable opportunity to meet facts outside the pleadings." *In re G. & A. Books, Inc.*, 770 F.2d 288, 295 (2d Cir. 1985).

Here, although Plaintiffs' claims would fail even under the legal standard applicable on a motion to dismiss, the instant motion more appropriately is treated as one for summary judgment because the Court has considered extrinsic materials submitted by Defendants. Plaintiffs had adequate notice that the motion could be treated as such, but nonetheless declined to respond. It is well settled, however, that "[Rule 56] . . . does not embrace default judgment principles." *Vermont Teddy Bear Co., Inc. v. 1-800 Beargram Co.*, 373 F.3d 241, 242 (2d Cir. 2004). Accordingly, the Court still "must review the motion . . . and determine from what it has before it whether [Defendants are] entitled summary judgment as a matter of law." *Id.* at 246. (quoting *Custer v. Pan Am. Life Ins. Co.*, 12 F.3d 410, 416 (4th Cir. 1993)).

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "In ruling on a summary judgment motion, the district court must resolve all ambiguities, and credit all factual inferences that could rationally be drawn, in favor of the party

opposing summary judgment and determine whether there is a genuine dispute as to a material fact, raising an issue for trial." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 202 (2d Cir. 2007) (internal quotations omitted). A fact is "material" within the meaning of Rule 56 when its resolution "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue is "genuine" when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. To determine whether an issue is genuine, "[t]he inferences to be drawn from the underlying affidavits, exhibits, interrogatory answers, and depositions must be viewed in the light most favorable to the party opposing the motion." *Cronin v. Aetna Life Ins. Co.*, 46 F.3d 196, 202 (2d Cir. 1995) (citing *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962) (per curiam) and *Ramseur v. Chase Manhattan Bank*, 865 F.2d 460, 465 (2d Cir. 1989)). "[T]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255. However, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

## II. FTCA Claims

The FTCA permits suits for damages against the United States "for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1); *see also Chen v. United States*, 854 F. 2d 622, 626 (2d Cir. 1988). As the events

5

giving rise to Plaintiffs' claims in this action occurred in New York, the Court looks to New York law to evaluate those claims. *See Collins v. Promark Prods., Inc.*, 956 F.2d 383, 386 (2d Cir. 1992).

   *a. Negligence*

Under New York law, a plaintiff asserting a claim for negligence must demonstrate: "(1) a duty owed by the defendant to the plaintiff, (2) a breach thereof, and (3) injury proximately resulting therefrom." *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 286 (2d Cir. 2006) (quoting *Solomon ex rel. Solomon v. City of New York*, 66 N.Y.2d 1026, 1027 (1985)); *see also King v. Crossland Sav. Bank*, 111 F.3d 251, 259 (2d Cir. 1997). With regard to the duty element of a negligence claim, "[i]t is well settled that landlords have a common-law duty to take minimal precautions to protect tenants and members of the public from the foreseeable criminal acts of third parties." *DeJesus v. N.Y. City Health & Hosps. Corp.*, 309 A.D.2d 729, 729 (2d Dep't 2003). Further, a public entity acting in the same capacity as a landlord is subject to the same duty. *See Miller v. State*, 62 N.Y.2d 506, 511 (1984).

However, the liability alleged against a defendant entity must be predicated on a duty owed by that defendant to maintain, control, supervise, secure, or exercise some other responsibility with respect to the premises where the injury occurred. *See Ajlouny v. Town of Huntington*, 184 A.D.2d 486, 487 (2d Dep't 1992); *Wali v. City of New York*, 22 Misc. 3d 478 (Kings Co. Sup. Ct. 2008); *see also* 62A N.Y. Jur. 2d Government Tort Liability § 215. Thus, where the defendant entity provides a supporting affidavit of an official which disavows any such responsibility in connection with premises at issue, there is no dispute as to that fact and the defendant is entitled to summary judgment unless the plaintiff presents evidentiary proof

substantiating the duty alleged. *See, e.g., Monteleone v. Incorporated Vil. of Floral Park*, 123 A.D.2d 312, 313-314 (2d Dep't 1986).

Here, Plaintiffs allege that Defendants "owned, controlled, operated, supervised, managed, secured, patrolled and maintained" North Shore Plaza in a negligent manner that permitted an assailant to enter the premises and cause injury to S.B., a tenant. (Compl. ¶ 3.) However, Defendants have provided affidavit evidence establishing, *prima facie*, that HUD was not the owner or manager of North Shore Plaza at any time relevant to this action, nor has it ever provided security, maintenance, or any other service for North Shore Plaza. (*See* Savapoulas Aff. ¶¶ 1-5.) Given their non-response to the instant motion, Plaintiffs have neither refuted that evidence, nor come forth with any evidence of their own to substantiate that Defendants owed them a duty. Nor does the Complaint contain any specific factual allegations concerning Defendants' relationship with North Shore Plaza that, if supported by evidence, would substantiate that Defendants owed a duty to Plaintiffs. Indeed, the evidence before the Court shows that the extent of HUD's relationship to North Shore Plaza was its provision of certain mortgage and rental subsidies in connection with the property and its tenants. (*See id.* 3-4.)

Based on the preceding facts, the Court finds that there is no genuine dispute of material fact that Defendants neither owned North Shore Plaza nor had any management, security, or maintenance responsibilities with respect to that property. As such, Defendants had no duty to protect the tenants from injury, whether caused by the criminal acts of a third party or otherwise. Further, the mere provision of mortgage and rental subsidies in connection with North Shore Plaza did not vest HUD with any such duty. *See, e.g. Montgomery v. City of New York*, 2010 WL 3563069, at *3 (S.D.N.Y. Sept. 7, 2010) (Provision of rental subsidies did not render HUD owner of property or obligate it to enforce landlord's responsibilities); *see also DeJesus*, 309

A.D.2d at 730 (even though it served as landlord for property, public entity not liable for criminal act where it had no control over property's "day-to-day operations.")  As Plaintiffs cannot establish the duty element of their negligence claims, Defendants are entitled to summary judgment dismissing those claims.

### b. *Negligent Infliction of Emotional Distress*

The Court construes the third, fourth, and sixth causes of action in the Complaint, which allege "zone of danger" liability, as asserting claims for negligent infliction of emotional distress. Under New York law, "where a defendant negligently exposes a plaintiff to an unreasonable risk of bodily injury or death, the plaintiff may recover, as a proper element of his or her damages, damages suffered in consequence of the observation of the serious injury or death of his or her immediate family." *Steinsnyder v. United States*, 2013 WL 1209099, at *3 (E.D.N.Y. Mar. 25, 2013) (quoting *Bovsun v. Sanperi*, 61 N.Y.2d 219, 230-31 (1984)).

Here, Plaintiffs' claims for negligent infliction of emotional distress are premised on the same alleged failure underlying their negligence claims against Defendants.  Specifically, Plaintiffs allege that Defendants failed to control, operate, manage, secure, or maintain North Shore Plaza in a manner that would have prevented an assailant from entering the premises and causing harm.  Having already established that they had no duty to protect North Shore Plaza's tenants from injury and, therefore, are entitled to dismissal of Plaintiffs' negligence claims, Defendants are similarly entitled to summary judgment dismissing Plaintiffs' claims for negligent infliction of emotional distress.  *See,e.g.*, *Burger v. Singh*, 28 A.D.3d 695, 698 (2d Dep't 2006) (affirming dismissal of negligent infliction of emotional distress claim where negligence cause of action alleged on same facts failed as a matter of law.)

## CONCLUSION

In accordance with the foregoing, Defendants' motion for summary judgment is granted and this action is dismissed in its entirety, with prejudice.

SO ORDERED.

Dated: Brooklyn, New York
September 23, 2015

/s/
DORA L. IRIZARRY
United States District Judge